**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

_____ )
)
**NGM INSURANCE COMPANY f/k/a**                )
**NATIONAL GRANGE MUTUAL**                       )
**INSURANCE COMPANY,**                              )
)
    **Plaintiff,**                                        )
)
    **v.**                                                  )    **CIVIL NO. 3:07CV536**
)
**SECURED TITLE & ABSTRACT, INC.,**            )
<u>et</u> <u>al.</u>                                                )
)
    **Defendants.**                                     )
_____)

<u>**MEMORANDUM OPINION**</u>

This matter is before the Court on Defendant United Bank's ("United Bank") Motion to

Dismiss the Third-Party Complaint that has been filed against it by Secured Title & Abstract,

Inc. ("Secured Title") (docket entry no. 60.)  All relevant issues have been fully briefed and oral

argument entertained.[1]  Accordingly, the matter is ripe for resolution.  For the reasons set forth

herein, the motion will be GRANTED.

_____

[1] Secured Title has not responded to the motion and declined, by counsel, to offer oral
argument, presumably because of the pending motion by counsel to withdraw from
representation (docket entry no. 78.)  The Court has not yet ruled on the motion to withdraw, but
it provided the subject parties an additional opportunity to secure substitute counsel (docket
entry no. 80.)  However, the parties (Secured Title and the Davises) failed to obtain substitute
counsel by the prescribed deadline, and are therefore deemed to have waived their respective
opportunity to address the Motion to Dismiss.  The Court is satisfied in any event that all
relevant issues have been fully explored and that the moving party (United Bank) is entitled to an
expeditious resolution of its motion.

# I. FACTUAL BACKGROUND

Secured Title, and individual defendants Larry and Janelle Davis ("the Davises")[2],
brought a third-party complaint against United Bank, seeking indemnification from the cross-
claim filed against them by Defendant David R. Licklider (Licklider) in which he seeks recovery
of funds and additional damages for the alleged wrongful actions of Secured Title and the
Davises in conjunction with a real estate transaction in which he was a party.  (Third-Party
Compl. at 6.)  Secured Title is a "non-lawyer closing/settlement agency" that facilitates the
closing of loans for, and purchases of, real property.  (Third-Party Compl. Ex. 1 (Ex.1) at ¶ 4.)
Secured Title conducts business in the Winchester, Virginia area where United Bank operates as
well, and where Secured Title formerly held an escrow account with United Bank's predecessor,
Marathon Bank.[3]  (Id. at ¶¶ 1, 3-6.)

Secured Title opened an escrow account with Marathon Bank (now United Bank) in 1992
and closed the account in late March 2007.  (Id. at ¶ 3.)  The relationship between Secured Title
and Marathon Bank was reportedly uneventful until 1996 when recurring problems with wire
transfer credits began to occur.  (Id. at ¶ 10.)  Secured Title asserts that Marathon Bank
repeatedly failed to credit Secured's escrow account with deposits, and on more than one
occasion caused the account to have a negative balance when, if the deposits had been correctly
reported, there would have been a positive balance.  (Id. at ¶¶ 12, 15, 17.)  Secured Title also
claims that the account credit problems caused delays in it being able to close various real estate

---

[2] Larry and Janelle Davis are the President and CEO, respectively, of Secured Title as
well as directors and stockholders of the company.

[3] United Bank is the successor to Marathon Bank by way of merger.  (Third-Party Compl.
¶ 30.)  The Marathon Bank is also the named defendant in a related state court action that
Secured Title is currently pursuing as discussed herein.  (Ex. 1.)

transactions in which it was involved.  (Id. at ¶ 14.)  Due to the continued problems, Secured

Title began to review all of its transactions involving Marathon Bank.  In April 2006, Secured

Title discovered that several deposits had not been recorded and concluded that Marathon Bank

was recording unauthorized debits in the account.  (Id. at ¶ 21.)  Specifically, Secured Title

noticed that three deposits totaling $306,770.21 from 1996 to 1999 were never credited to the

account.  (Id. at ¶¶ 25-26.)  Additionally, Secured Title asserts that it is "short" $837,695.14 due

to additional missed credits and unauthorized debits occurring from 1997 to 2006.  (Id. at  ¶¶ 27-

28.)  Secured Title asserts claims in the Third-Party Complaint for breach of contract,

conversion, unjust enrichment, fraud, constructive fraud, and negligence in the total amount of

$1,144,465.35 due to the alleged mismanagement of its funds by Marathon Bank from 1996 to

2006.  (Id. at ¶¶ 45-71.)  Furthermore, Secured Title seeks $1,000,000 in compensatory damages,

as well as punitive damages in the amount of $1,000,000 (for the fraud and constructive fraud

claims) for a combined total of $3,144,465.35.  (Id. at ¶¶ 67-64, 71.)

## II.  PROCEDURAL BACKGROUND

As previously noted, the Third-Party Complaint results from the Cross-Claim that, in

turn, has been asserted by Licklider against Secured Title in this interpleader action.  In the

original action, NGM Insurance Company seeks to interplead all parties who may have a claim

to an indemnity bond it issued to Secured Title in the amount of $100,000.  (Compl. to Interplead

Funds 1-7.)  Licklider is a party in the interpleader action based on his claim that Secured Title

owes him $112,857.76 for having failed to properly close a real estate transaction in which

Licklider had provided the funds as prospective purchaser to Secured Title to consummate the

transaction. (Compl. to Interplead Funds 7-8.)  Accordingly, Licklider has filed the Cross-Claim

against Secured Title and its owners, the Davises.  In his Cross-Claim, Licklider asserts that Secured Title breached its fiduciary duty to him and that he is therefore entitled to compensatory damages in the amount of the $112,857.76, as well as punitive damages in the additional amount of $500,000.  In response to the Cross-Claim, Secured Title filed the Third-Party Complaint against United Bank in conjunction with its Answers to the interpleader action.  The Third-Party Complaint seeks to compel United Bank (as the successor to Marathon Bank) to indemnify Secured Title against any award that may arise out of Licklider's Cross-Claim.  (Third-Party Compl. at ¶ 33.)  United Bank then filed the instant Motion to Dismiss as well as a motion to sever the Third-Party Complaint in the event the Motion to Dismiss is denied (docket entry no. 73.)

### III.  UNITED BANK'S MOTION TO DISMISS

In its motion to dismiss, United Bank asserts that the Court should not exercise its supplemental jurisdiction over the Third-Party Complaint, but instead should dismiss it pursuant to Federal Rule of Civil Procedure ("FRCP" or "Rule") 12(b)(1) due to lack of subject matter jurisdiction.  (United's Mot. in Supp. of Mot. to Dismiss at 1.)  Specifically, United Bank claims that this Court does not have subject matter jurisdiction under 28 U.S.C. § 1367(a) because the Third-Party Complaint is not part of the same "case or controversy" as the original interpleader action that confers federal jurisdiction.  (United's Mem. in Supp. of Mot. to Dismiss (United's Mem.) at 4-5.)  Furthermore, United Bank urges that this Court should not exercise its supplemental jurisdiction because the state law claims in the Third-Party Complaint predominate over the federal claims, and the parallel state court proceedings that are currently pending involving the same claims represent "exceptional circumstances" under 28 U.S.C. §§ 1367(c)(2)

& (4) foreclosing federal jurisdiction.  (United's Mem. at 5-8.)  Finally, United Bank asserts that

the Third-Party Complaint must be dismissed pursuant to FRCP Rule 12(b)(6) for failure to state

a claim upon which relief can be granted.  (Id. at 9-12.)

## A.      12(b)(1) Argument

### 1.      Standard of Review

The plaintiff has the burden of proof in a subject matter jurisdiction challenge under

Rule 12(b)(1).  Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765,

768 (4th Cir. 1991).  When ruling on a 12(b)(1) motion, the Court considers the pleadings, and it

may also consider evidence outside of the pleadings without necessarily converting the motion to

one for summary judgment.  Evans v. B.F. Perkins Co., a Div. of Standex Intern. Corp., 166 F.3d

642, 647 (4th Cir. 1999) (citing Richmond, Fredericksburg & Potomac R.R. Co., 945 F. 2d at

768).  The moving party will prevail as a matter of law if material jurisdictional issues are not in

dispute.  Id.

### 2.      28 U.S.C. §§ 1367(c)(2), (4)

It is within the court's discretion whether to exercise supplemental jurisdiction in a

particular case.  United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) ("It has

consistently been recognized that [supplemental] jurisdiction is a doctrine of discretion, not of

plaintiff's right").  Federal courts have the discretion to decline supplemental jurisdiction if state

law claims substantially predominate over those claims that originally provided federal

jurisdiction.  28 U.S.C. § 1367 (c)(2).  The Fourth Circuit has held that declining to exercise

jurisdiction on a finding of predomination is for the purpose of avoiding federal interference with

state enforcement schemes.  White v. County of Newberry, S.C., 985 F.2d 168 (4th Cir. 1993).

Here, the Court must consider whether the multiple state law claims asserted in the Third-Party

Complaint "substantially predominate" over the federal law claims of the Interpleader action and

the Cross-Claim.

There are several decisions in this circuit that address the issue.  In Stewart v. W. Va.

Employers' Mut. Ins. Co., for example, the court held that state law claims did not predominate

over the claim that conveyed federal jurisdiction.  No. 2:07-0168, 2007 WL 4300595

(S.D.W.Va. Dec. 5, 2007).  Stewart involved state law claims of breach of contract, negligence,

and fraudulent inducement, as well as wrongful denial of long term disability benefits in

violation of federally-protected interests.  Id.  The court exercised supplemental jurisdiction over

the state law claims because it concluded that separating the state law claims from the federal

claims would have led to the unnecessary litigation of the same, essential controversy in two

different forums.  Id.  The court also based its decision on a finding that the state law issues were

not novel, and that judicial economy would be best served by exercising its supplemental

jurisdiction in order to resolve all issues in one case.  Id.

Conversely, in another case, the same district court that retained supplemental

jurisdiction in Stewart declined supplemental jurisdiction because of a predomination finding.

Holley v. Harper,  No. 5:06-cv-00425, 2007 WL 580573 (S.D.W.Va. Feb. 21, 2007).  In Holly,

the court held that the focus of the evidence in the case involved the state law issues as

contrasted with that which would be necessary to establish the federal law claims.  Id.  In

addition, the court noted that the state court proceeding had already consumed significant state

resources, including substantial discovery that had taken place.  Id.

In yet another case, Council of Unit Owners of the Wisp Condo., Inc. v. Recreational Indus., Inc., the court also declined to exercise its supplemental jurisdiction due to "exceptional circumstances" based on a predominance of state law claims.  793 F.Supp. 120, 123 (D. Md. 1992).  The court declined jurisdiction because it found that to retain jurisdiction would, in effect, result in the litigation of a case that was "essentially a state law case."  Id.

Here, the Third-Party Complaint enumerates six state law claims against United Bank and, unlike in Stewart, no federal claims.  Moreover, the claims are not novel or complex, and the same claims are the subject of the pending state court proceeding.  As noted by United Bank, the state court has already extended substantial effort in the matter and at least most of any remaining discovery will be conducted in that jurisdiction.  (See Ex.'s A, B, C, & D att'd to United's Mem..)

28 U.S.C. § 1367(c)(4) provides a federal court with the discretion to decline supplemental jurisdiction if it finds "exceptional reasons" or "other compelling reasons" to do so.  United Bank argues that, pursuant to the statutory provision, the efforts already expended by the state court constitute "exceptional circumstances" that should compel this Court to decline supplemental jurisdiction.  (United's Mem. at 7.)  In support of its argument, United Bank cites case authority in which the court found that the "considerable time and energy" that had already been expended by a state court in a related state action created an exceptional circumstance as addressed in § 1367(c)(4) and warranted the court's decision to decline to exercise supplemental jurisdiction.  (Id. at 7 (citing Loral Fairchild Corp. v. Matsushita Elec. Co., Ltd., 840 F. Supp. 211, 216 (E.D.N.Y. 1994)).)  The Loral court held that it does not even matter if a federal action is commenced before the related state action; rather, the issue in deciding whether to exercise

supplemental jurisdiction involving issues of predomination is whether the state court proceedings have progressed to a meaningful stage when the federal court is deciding whether to exercise supplemental jurisdiction.  Id. at 216-17.

The Third-Party Complaint in this case involves circumstances similar, if not identical, to the existing authority that supports a declination of supplemental jurisdiction due to "exceptional circumstances."  Six claims are asserted that are all purely state law claims that do not present novel or unduly complex issues.  (Third-Party Compl. at ¶ 32.)  The claims are already being litigated in state court.  All of the witnesses designated for discovery deposition reside in that state jurisdiction.  (United's Mem. at 8, n.5.)  Furthermore, Secured Title has already commenced its own discovery procedures in the state court proceeding, and the state court has ruled on various issues in the case.  (Id, Exs. B & C.)   Accordingly, due to the predomination of state law claims and "exceptional circumstances" per 1367(c)(4), United Bank's Motion to Dismiss will be GRANTED.

**B.      United Bank's Remaining Arguments**

United Bank raises additional arguments in support of its Motion to Dismiss, but they are not the basis for the Court's granting the motion.  Nevertheless, the Court deems it appropriate to address them for possible future reference.

**1.      28 U.S.C. § 1367(a)**

Pursuant to 28 U.S.C. § 1367(a), a federal court can exercise supplemental jurisdiction over  state law claims if those claims form the "same case or controversy" as the claim that provided the court with original jurisdiction.  Wis. Dep't of Corrs. v. Schacht, 524 U.S. 381, 387 (1998) .  The same case or controversy exists if the claims arise out of a "common nucleus of

operative fact," thus, in effect, forming a single action.  City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 164-165 (1997) (citing Gibbs, 383 U.S. at 725).

Accordingly, in order for the Court to exercise supplemental jurisdiction here, the Third-Party Complaint must have arisen out of the same operative facts as involved in the Licklider Cross-Claim and the Interpleader.  See Molina v. Mallah Org'n, Inc., 817 F. Supp. 419 (S.D.N.Y. 1993).  Furthermore, the Third-Party Claim must not necessitate the resolution of any novel or complex issues of state law, while also promoting judicial economy.  See Estate of Bruce v. City of Middletown, 781 F. Supp. 1013 (S.D.N.Y. 1992).

United Bank argues that the Third-Party Complaint cannot be part of the same case or controversy as the Cross-Claim because Secured Title closed its account with Marathon Bank over a month before the closing of the Licklider transaction, and thus never had any interaction with the funds that are the subject of the Cross-Claim.  (United's Mem. at 4.)  Furthermore, United Bank argues that no allegations set forth in the pleadings, or evidence adduced outside the pleadings, demonstrates that the claims share a common nucleus of operative fact so as to constitute the same case or controversy.  (Id. at 4.)

The original action that confers federal jurisdiction in this case is NGM's interpleader action in which Licklider's claim for $112,857.76 that is being sought from Secured Title is specifically addressed and thereby involved.  (Compl. to Interplead Funds at 7-8.)  The Cross-Claim therefore arises from the same claim whereby Licklider contends that Secured Title mishandled those funds.

However, while it is correct that Secured Title closed its escrow account with Marathon in late March 2007, and transferred it to another bank, the uncontested evidence presented

establishes that the Lickliders entered into a contract to sell their property on March 5, 2007, before Secured Title closed its account, and it is not clear whether the disputed funds were deposited into escrow account before Secured Title closed its account with Marathon Bank.  If the funds were deposited with Marathon Bank before the escrow account was closed, then it may have been subject to the same mishandling which Secured Title claims occurred in regard to other funds that it forwarded to Marathon Bank.  If Marathon Bank did have access to the Licklider funds, then the Third-Party Complaint potentially involves allegations that are part of the same case or controversy as the Interpleader that provides federal jurisdiction.  Nevertheless, where the evidence at this juncture is inconclusive as to the issue, the Court is unable to determine whether the Third-Party Complaint involves issues that are part of the same case or controversy as the Interpleader action.

### 2.      12(b)(6) Argument

**12(b)(6)**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff.  Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955, 1964 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)).  Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him [or her] to relief." <u>Conley</u>, 355 U.S. at 45-46.  In <u>Bell Atlantic Corp.</u>, the Supreme Court noted that the complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." 127 S. Ct. at 1964-65 (citations omitted).  Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," <u>id</u>. at 1965 (citation omitted), to one that is "plausible on its face," <u>id.</u> at 1974, rather than "conceivable." <u>Id.</u>  Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." <u>Bass v. E.I. Dupont de Nemours & Co.</u>, 324 F.3d 761, 765 (4th Cir. 2003) (citing <u>Dickson v. Microsoft Corp.</u>, 309 F.3d 193, 213 (4th Cir. 2002); <u>Iodice v. United States</u>, 289 F.3d 270, 281 (4th Cir. 2002)).

United Bank also argues that if Secured Title's allegations that Marathon Bank maintained the escrow account with a negative balance are true, then it violated the Virginia Consumer Real Estate Settlement Protection Act (CRESPA) and is at least partially responsible for any loss that precludes the granting of the requested relief.  (<u>Id.</u> at 10-11.)  More specifically, United Bank asserts that if Marathon Bank mishandled Secured Title's funds during the period alleged in the Complaint, Secured Title had to have been mishandling other clients' funds in

violation of CRESPA in order to satisfy deficits in unrelated accounts caused by the alleged misdeeds of Marathon Bank.  (Id. at 10-11.)

The purpose of CRESPA is to require entities involved in "escrow, closing, or settlement" activities to comply with certain safeguards.  Va. Code Ann. § 6.1-2.19(B). CRESPA provides, as United Bank argues, that funds provided to a settlement agent to be put into an escrow account remain the property of the person entitled to those funds under the terms of the escrow agreement; and at no time does the settlement agent have an interest in those funds; nor may that agent disburse those funds except as provided for by the escrow agreement. Va. Code Ann. § 6.1-2.23(A)(1) & (C).

Moreover, CRESPA requires a settlement agent to segregate and maintain each client's escrow funds so that the fund can be individually identified.  Va. Code. Ann. § 6.1-2.23(A)(1). Secured Title alleges that Marathon Bank mishandled the escrow funds that Secured Title deposited at the Bank, causing those funds to be unaccounted for in the account.  Accordingly, United Bank argues that if Secured Title's claims against Marathon Bank are true, then Secured Title is at fault because it was not exercising its fiduciary responsibilities as a settlement agent as required by CRESPA.  Stated another way, where the funds in the escrow account maintained by the Bank were not the property of Secured Title, Secured Title would have necessarily violated CRESPA by using funds from one client's escrow account to satisfy a deficit in another client's account.

However, simply because Secured Title might have been in violation of CRESPA does not, at the same time, mean that there was not mishandling of funds by Marathon Bank; and if Marathon Bank did mishandle funds, then Secured Title could be entitled to recover against

-12-

Marathon regardless of whether Secured Title was in violation of CRESPA.  Did Marathon Bank ever mishandle the funds related to the Licklider transaction?  If it did not, then there is no relationship between the Cross-Claim and the Third-Party Complaint, and thus no federal jurisdiction for the latter.  However, again, there is an insufficient factual basis on the present record to determine whether or not Marathon Bank was involved with the Licklider transaction.

United Bank further argues that even if Secured Title did suffer a loss of $1.14 million from 1996 to 2006 because of the actions of Marathon Bank, such a loss necessarily involved the funds of other parties than Licklider such that those funds could not have been dedicated to Licklider's use in any event.  (Id. at 11.)  Accordingly, United Bank asserts that Secured Title has failed to allege a claim for which relief can be granted.  (Id.)  However, the Third-Party Complaint need not be restricted to the Licklider matter; it need only include it.  In any event, the Court declines to exercise its supplemental jurisdiction for other reasons, as previously discussed herein.

## IV. <u>UNITED BANK'S MOTION TO SEVER</u>

United Bank has also filed a motion to sever in the event that the Motion to Dismiss is to be denied (docket entry no. 73).  Where the Court will GRANT United Bank's motion to dismiss, the Motion to Sever will be DENIED as MOOT.

## V. <u>CONCLUSION</u>

The relationship between Marathon Bank and the funds in the Licklider transaction is not sufficiently established, at least at present.  Evidence establishing the fact that Marathon Bank did or did not have access to the funds would clarify whether there would be federal jurisdiction to resolve the controversy that is the basis of the Third-Party Complaint.  Nevertheless, given the

predominance of state law claims set forth in the Third-Party Complaint, and the extent of the actions already undertaken by the state court in the parallel state proceeding, a separate basis exists on which to grant United Bank's motion, and the Court concludes that it would therefore be improper to exercise supplemental jurisdiction over the Third-Party Complaint.  Accordingly, United Bank's Motion to Dismiss the Third-Party Complaint (docket entry no. 60) will be GRANTED.

An appropriate Order shall issue.

_____/s/_____
Dennis W. Dohnal
United States Magistrate Judge

Date: April 22, 2008
Richmond, Virginia