**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| _____ | |
| ) | |
| **NGM INSURANCE COMPANY f/k/a** ) | |
| **NATIONAL GRANGE MUTUAL** ) | |
| **INSURANCE COMPANY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL NO. 3:07CV536** |
| ) | |
| **SECURED TITLE & ABSTRACT, INC.,** ) | |
| **et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| _____) | |

**MEMORANDUM OPINION**

This matter is before the Court on the Cross-Claimant/Defendant David R. Licklider's

("Cross-Claimant" or "Licklider") Application for Attorney's Fees and Costs (Docket No. 118).

The Cross-Claimant has presented all relevant documents and information to the Court, and as

Cross-Defendants have not objected or otherwise responded within the required time period, the

Court concludes that oral argument would not be of additional assistance in the decisional

process.  For the reasons set forth herein, the Cross-Claimant's Motion for Attorney's Fees will

be GRANTED.

**I. Background**

This suit was initiated in by NGM Insurance Company ("NGM") by interpleader joining

all parties who may have had a claim on an indemnity bond that had been issued to Defendant

Secured Title & Abstract, Inc ("Secured Title"). (Interpleader Compl.)   NGM alleged that it had

issued a bond related to Secured Title's involvement as settlement agent in a real estate

transaction, naming Secured Title as its principal and co-obligor, and the Commonwealth of

Virginia as its obligee. (Interpleader Compl. ¶ 24.)  NGM received claims totaling in excess of

$600,000 from various claimants, all of whom alleged that Secured Title received funds as an

escrow agent, but failed to properly disburse funds or otherwise satisfy other obligations for

which the funds were provided. (Interpleader Compl. ¶ 25.)

NGM has settled all claims pertaining to the original dispute.  The only outstanding claim

arises from a cross-claim brought by Defendant and Cross-Claimant Licklider against Secured

Title and its owners, Janelle M and Larry T. Davis (collectively "the Davises") (Docket No. 50).

Licklider's cross-claim and subsequent motion for summary judgment were based on allegations

that Secured Title, the Davises owed him $112,857.76 for improperly closing a real estate

transaction in which Licklider was the property seller.  (Cross-Claim Compl. ¶ 3.) Specifically,

Licklider claimed that as part of an escrow agreement made in relationship to the sale of his

property, Secured Title was to hold the property in escrow until several payment obligations,

including a $112,857.76 distribution to Licklider from the sale proceeds, were made. (Cross Pl.'s

Mem. Supp. Mot. Summ. J. "Pl's Mem" at 2.)  The real estate was conveyed by recorded deed to

the purchasers; however, Licklider did not receive any disbursement from the sale. (Pl.'s Mem.

at 2.)  Licklider's cross-claim asserted that Secured Title, acting by and through the Davises,

falsely represented to him that the disbursement had been wired to his bank account, but that it

had not been processed properly because of an error in routing numbers. (Pl.'s Mem. at 3-4.)

According, Licklider asserted that Secured Title breached its fiduciary duty to him and that he

was therefore entitled to compensatory damages in the amount of $112,857.76 as well as

punitive damages in the amount of $350,000 against each Cross-Claim Defendant. (Pl.'s Mem. at 9-13.)

In response to Licklider's allegations, Secured Title and the Davises conceded that Licklider did not receive the $112,857.76 distribution pursuant to the escrow agreement; however, they claimed that they attempted in good faith to disperse the money to Licklider, and that it was their bank that failed to appropriately distribute the funds. (Cross Defs.' Mem. Opp. Mot. Summ. J."Defs.' Mem." at 4-5.)  Essentially, the Davises claimed that they did not fraudulently or intentionally deceive Licklider about the wire transfer because they believed that there were available funds and that their Bank would complete the transfer as ordered. (Defs.' Mem. at 4-5.) Thus, having ordered the transfer, the Davises and Secured Title argued that they did not breach their fiduciary duty where it was their bank that failed to distribute the funds. (Defs.' Mem. at 6.)

The Court entertained arguments on Licklider's motion for summary judgment, and entered an Order granting the motion in part and denying the motion in part. (Docket No. 16). The Court granted the motion on Licklider's claim for breach of fiduciary duty against the Davises, the Court having previously found Secured Title in default.  The Court concluded that pursuant to controlling Virginia statutory law, as closing agents in the subject real estate transaction, the Davises and their company were required to segregate and maintain the funds and pay a sum certain to Licklider.  Va. Code § 6.1-2.23(a).  (Mem. Opinion at 5-6.)  The Court found that the Davises acknowledged failure to do so, for whatever reason, sustained Licklider's claim for breach of fiduciary duty. (Mem. Opinion at 5-6.)  However, the Court denied Licklider's motion seeking punitive damages claim, finding that there was a material factual

dispute as to the Davises' intent in failing to disburse the subject funds. (Mem. Op. at 6.)  Thus, the issue of punitive damages, the only remaining issue from the Cross-Claim, remains for jury resolution at trial.  Based upon the Court's findings, Licklider filed the current Motion for Attorney's fees pursuant to Virginia Code § 6.1-2.15.

## II. Analysis

Pursuant to Virginia Code § 6.1-2.15, any person who suffers losses due to a lender or settlement agent's failure to disburse payments as required under Virginia law is entitled to reasonable attorneys fees. Va. Code Ann. § 6.1-2.15 (West 2008).  As addressed earlier, the Court entered an Order granting partial summary judgment on Cross Claimant's claim that the Davises breached their fiduciary duties to Licklider by failing to properly disperse funds pursuant to contract.  As such, Cross Claimant seeks attorneys fees related to the resolution of that claim.

Cross-Claimant's counsel has submitted by affidavit and supporting documentation evidence of the nature and extent of his and his office's efforts in this matter, as well as unrebutted proof of what other skilled practitioners in the same market area believe to be a reasonable hourly rate for such efforts after taking into account respective levels of experience and expertise. (Shelley Aff. ¶ 11-13; Williams Aff. ¶ 7-8.)  In considering what attorneys fees are deemed reasonable and appropriate, the Court is guided by the factors identified initially in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-719 (5th Cir. 1974), and subsequently adopted in this circuit in Barber v. Kimbrell's, Inc., 577 F.2d 216, 226-28 (4th Cir.

1978) cert. denied, 439 U.S. 934 (1978).[1]  In addition, certain basic rules emerge from an

analysis of relevant case precedent:

1.      The moving party has the burden of "establishing the reasonableness of the requested amount both by showing the reasonableness of the rate claimed and the number of hours spent."  Rehab. Ass's of Va., Inc. V. Metcalf, 8 F. Supp. 2d 520, 527 (E.D. Va. 1998) (citations omitted).

2.      A court must make "detailed findings of fact with regard to the factors considered . . . in arriving at a determination of reasonable attorney's fees in any case where such determination is necessary."  Barber, 577 F.2d at 229.

3.      The "reasonableness of the rate" must be based on an assessment of the prevailing market rate in the relevant legal community "for similar services by lawyers of reasonably comparable skill, experience, and reputation."  Blum v. Stenson, 465 U.S. 886, 895-96 n. 11 (1984); see also Rehab Ass'n. Of Va., Inc., 8 F. Supp. 2d at 527 (citing authority); Am. Canoe Ass'n v. EPA, 138 F. Supp. 2d 722, 740-41 (E.D. Va. 2001).

4.      The court can and should assess the degree of skill demonstrated in performing the representation and factor that into a determination of the prevailing market rate.  See Johnson, 488 F.2d at 718.

5.      Many of the factors involved in the Johnson twelve point analysis are "subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate."  Hensley v. Eckerhart, 461 U.S. 424, 434 n. 9 (1983).

6.      The hourly rate charged consistent with the prevailing market rate, multiplied by the number of hours spent, equals the "lodestar" figure that is presumed to be reasonable.  See, e.g., United States Football League, et al. v. Nat'l Football League, 887 F.2d 408, 413 (1989).

---

[1]  The often cited Johnson factors are: "(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the preclusion of other employment by the attorney as a result of acceptance of the case; (5) the customary fee for like work; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the 'undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship with the client; and (12) attorney's fees awarded in similar cases."  Rehab. Ass's of Va., Inc. V. Metcalf, 8 F. Supp.2d 520, 527 (E.D. Va. 1998).

7.  In addition, the lodestar figure may be adjusted upward or downward to take into account additional or remaining factors set forth in the twelve point analysis of Johnson, so as to result in a combined lodestar and Johnson standard whereby "the product of reasonable hours time a reasonable rate represents a proper fee." Rehab. Ass'n of Va., Inc., 8 F. Supp. 2d at 529 (quoting Rum Creek Coal Sales, Inc. V. Caperton, 31 F.3d 169, 175 (4th Cir. 1994)).

The Court has reviewed the detailed time records of counsel (that have not been challenged by the defendant), and although there is evidence of some fees and/or costs that could be challenged, e.g., spending .30 hours reviewing the notices of electronic filing received in regard to the motions filed by Cross Claimant's own attorney; such entries are minimal and the Court is not otherwise prepared to definitively find that any of the efforts were excessive or wasteful, especially where counsel afforded Cross-Claimant a $4,932.99 discount due to Cross-Claimant's personal financial circumstances and yet is not seeking such compensation from the Davises.  Additionally, the Court is mindful of the need for close attention in the representation of a party in this type of complex litigation, especially in a specialized area of the law by attorneys such as Cross-Claimant counsel who do not have the advantage of larger firm resources.  Moreover, the Court notes from its own observations that Cross-Claimant counsel has been diligent in resolving the matter and has demonstrated both in Court and by his recorded efforts, competence and dedication in service to his client.

Having reviewed the detailed records and affidavits submitted by Cross-Claimant counsel, and upon consideration of the Johnson factors and other relevant case law, the Court finds that the fees charged in relationship to the initial interpleader action and subsequent cross-claim are reasonable, given the length and thoroughness of representation, the complexity of the issues, and the average rates in this local market for this type of representation.  The Court will therefore award the full amount of the requested fees and costs expended thus far.

An appropriate order shall issue.

_____/s/_____
Dennis W. Dohnal
United States Magistrate Judge

Dated:  October 17, 2008

10

11

12